UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KELVIN R. HOFFMAN,

                    Plaintiff,

v.                                    Case No. 3:10-cv-610-J-37JBT

MELODY FLORES, etc.; et al.,

                    Defendants.

_____

**ORDER**

**I.  Status**

     Plaintiff, represented by counsel, is proceeding on an Amended
Complaint (Doc. #15) (hereinafter Amended Complaint), filed on
December 3, 2010.[1] Defendants' December 17, 2010, Motion to Dismiss
(Doc. #16) (hereinafter Motion to Dismiss) and Defendant Flores' May
23, 2011, Motion to Dismiss (Doc. #22) (hereinafter Flores' Motion
to Dismiss) are pending before the Court.  Plaintiff responded to
these motions on February 12, 2011 (Doc. #19) (hereinafter Response)
and on June 27, 2011 (Doc. #25) (hereinafter Response/Flores).[2] See
Order (Doc. #9).

_____

     [1] Plaintiff filed his original complaint *pro se* (Doc. #2), and
the case was removed from the Circuit Court of the Eighth Judicial
Circuit, in and for Baker County, Florida, by the Defendants.  See
Notice of Removal (Doc. #1).

     [2] Plaintiff was made aware of the provisions for responding to
a motion to dismiss in the Court's Order (Doc. #9), filed August 9,
2010, and given an opportunity to respond.

Plaintiff names Melody Flores, the warden at Baker Correctional Institution; Sam A. Bassett, a correctional officer at BCI; Walter A. McNeil, the former Secretary of the Florida Department of Corrections; and the Florida Department of Corrections (hereinafter FDOC) as the Defendants.  As relief, Plaintiff seeks "an award of damages."

## II.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

- 2 -

plausibly give rise to an entitlement to relief.

Id. at 1950.

The liberal pleading standard set forth by Rule 8(a)(2), Fed. R. Civ. P, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]", will be the standard employed by the Court, along with construing the Amended Complaint "so as to do justice." Fed. R. Civ. P. 8(e).

### III.  The Amended Complaint

In the Amended Complaint, Plaintiff presents the following factual allegations.  Plaintiff was confined at Baker Correctional Institution (hereinafter BCI).  Amended Complaint at 1.  He suffered from urinary incontinence and dysfunction of bladder control, which was known to Defendant Bassett.  Id. at 2.  This impairment and dysfunction substantially impaired Plaintiff's ability to urinate voluntarily and at will.  Id.

On September 28, 2009, Defendant Bassett demanded a urine sample from Plaintiff, removed Plaintiff from his cell and placed him in a shower area.  Id. at 3.  Plaintiff explained his urination problems and was unable to produce a sample.  Id.  Plaintiff requested that Defendant Bassett verify Plaintiff's physical impairment by contacting the medical staff.  Id.  Defendant Bassett did not contact the medical staff.  Id.  Furthermore, he continued to demand Plaintiff produce a urine sample.  Id.

- 3 -

Plaintiff attempted to comply with Bassett's orders, fearing the receipt of a disciplinary report for failure to comply with a direct order to produce a urine sample. <u>Id</u>. In response to Defendant Bassett's demands, Plaintiff strained and forced himself to urinate, resulting in blood passing from his penis. <u>Id</u>. Defendant Bassett authored and submitted a disciplinary report against Plaintiff as a result of Plaintiff's failure to comply with his demands to produce a urine sample. <u>Id</u>. Plaintiff was not entitled to participate in a work-release program, because he had a disciplinary violation, which meant that he was unable to earn wages while he was incarcerated. <u>Id</u>. Additionally, as a result of the disciplinary report, he was segregated from the general prison population and deprived of additional liberties from September 28, 2009, through November 19, 2009. <u>Id</u>. at 4.

On November 20, 2009, Defendant Flores became aware of the incident. <u>Id</u>. at 6. As warden of the institution, she had the ability to approve Plaintiff for work release. She failed to take any remedial action. <u>Id</u>. Although Plaintiff was otherwise eligible for work-release, except for the disciplinary measure, Defendant Flores did not approve Plaintiff for work-release. <u>Id</u>. at 6. Plaintiff was prevented from earning any wages while incarcerated. <u>Id</u>.

## IV.  Counts

In Count I, Plaintiff raises a civil rights claim, pursuant to 42 U.S.C. § 1983, against Defendant Bassett.  Plaintiff claims to have exhausted all administrative remedies.  He asserts that Defendant Bassett knew that he had a physical impairment, and Bassett knew, or should have known, that the impairment and dysfunction substantially impaired Plaintiff's ability to urinate voluntarily and at will.  Plaintiff asserts that Defendant Basset's actions in demanding a urine sample from Plaintiff constituted deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth Amendment proscription against cruel and unusual punishment.  Plaintiff contends this caused physical harm: the passing of blood through his urinary tract.  He claims it caused emotional harm, as he suffered humiliation and degradation. Plaintiff also asserts that he lost wages as a result of the disciplinary report and being removed from consideration for work-release.  Finally, he contends that he was placed in segregation and deprived of additional liberties from September 28, 2009, through November 19, 2009.

In sum, Plaintiff claims Defendant Bassett's actions caused Plaintiff to suffer injury, endure emotional distress, and lose privileges and wages.  Plaintiff seeks an award of unspecified damages against Defendant Bassett.

In Count II, Plaintiff claims he was subjected to the intentional infliction of emotional distress by Defendant Bassett. Plaintiff asserts that Bassett's actions were so outrageous in character, and so extreme in degree, that they went beyond the bounds of decency.  Plaintiff contends that Defendant Bassett is subject to personal liability under § 768.28, Florida Statutes, as he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of Plaintiff's rights and safety.  As a result of Bassett's actions, Plaintiff claims he suffered emotional distress and humiliation.  Plaintiff is seeking unspecified damages against Defendant Bassett.

In Count III, a claim pursuant to the Florida Torts Claims Act, Plaintiff names Defendants FDOC and McNeil as the governmental entity and the head of such entity, under § 768.28.  Plaintiff asserts that Bassett was negligent and owed a duty to Plaintiff to carry out his duties in a manner which accommodated Plaintiff's physical impairment.  Plaintiff claims Bassett failed to do so, resulting in Plaintiff suffering from injury, enduring emotional distress, and losing privileges and wages.  Plaintiff seeks an award of damages against Defendants FDOC and McNeil.

In Count IV, Plaintiff contends that Defendant Flores violated his civil rights under 42 U.S.C. § 1983.  Plaintiff asserts that he has exhausted all administrative remedies. Plaintiff claims Flores' refusal to take corrective action and to refuse to allow him to have

the opportunity to earn wages through the work-release program constituted deliberate indifference to Plaintiff's physical impairment. Plaintiff claims he suffered the harm of lost wages, and demands an award of damages against Defendant Flores.

In Count V, Plaintiff raises a Florida Torts Claims Act claim against Defendants McNeil and FDOC. Plaintiff asserts that Flores was negligent in failing to take corrective action, she owed a duty to Plaintiff to carry out her duties in a manner which accommodated Plaintiff's physical impairment, and as a direct and proximate result of her negligent action, Plaintiff suffered emotional distress, lost privileges, and lost wages. Defendants FDOC and McNeil are named as the governmental entity and the head of the entity. Plaintiff seeks an award of damages against Defendants McNeil and FDOC.

In Count VI, Plaintiff's American With Disabilities Act (hereinafter ADA) claim against FDOC, Plaintiff asserts that his difficulties with urination constitute a disability pursuant to 42 U.S.C. § 12131. He claims he is a qualified individual with a disability, and the disability was known by FDOC and its employees. Plaintiff contends that the failure of the employees of the FDOC to accommodate his disability has resulted in his suffering an injury, being denied the rights and privileges of a general prison population inmate, and being deprived of the opportunity to earn wages in the work-release program. He contends that by being placed

- 7 -

in solitary or disciplinary confinement, he was excluded from services, programs and activities offered to the general prison population.  He was also excluded from the work-release program. He alleges that by subjecting him to a disciplinary report and by failing to take corrective action once the disciplinary report was issued, he suffered from the exclusion from services, programs, and activities, including work-release.  Plaintiff seeks an award of damages against FDOC.

## V.  Conclusions of Law

In the Motions to Dismiss, Defendants Bassett, McNeil, FDOC and Flores assert that Plaintiff Hoffman has raised various claims in his Amended Complaint which either fail to state a cause of action, have not met a condition precedent to suit, or are subject to preclusion.  When reviewing Plaintiff's Amended Complaint, the Court must apply the Twombly - Iqbal plausibility standard.  The Court will assume "that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010) (footnote omitted).

### A.  Eighth Amendment Claim Against Bassett

Plaintiff, in the Amended Complaint, claims that Defendant Bassett's demand that he provide a urine sample, while having knowledge of Plaintiff's physical impairment, resulted in Plaintiff being subject to cruel and unusual punishment in violation of the

Eighth Amendment of the United States Constitution.  In the Motion to Dismiss at 4-6, Defendants contend that Plaintiff has not presented a claim of constitutional dimension in Count I because mere threatening language does not amount to a constitutional violation actionable under section 1983.

"It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983." Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (citing Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).  "Mere threatening language and gestures by an officer is not a constitutional violation actionable under section 1983." Centaur v. Werner, No. 3:03-CV-848-J-32MCR, 2005 WL 1345624, at *4 (M.D. Fla. June 6, 2005) (not reported in F.Supp.2d) (citing Cook v. City of Elkader, Iowa, No. C03-1029, 2005 WL 151937, at *10 (N.D. Iowa Jan. 21, 2005); Bender v. Crumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).  Here, however, Plaintiff is not simply alleging verbal abuse.  Plaintiff is asserting that Defendant Bassett ordered him to produce a urine sample, even though he knew Plaintiff suffered from urinary incontinence and dysfunction of bladder control.  When Plaintiff was unable to produce the sample upon command, Plaintiff requested the Defendant Bassett verify Plaintiff's medical condition by contacting the medical staff. Bassett did not do so, and again ordered Plaintiff to produce a sample.  Due to his fear of the sanctions which would follow a failure to obey an officer's orders, Plaintiff strained and forced

himself to urinate, resulting in the passage of blood from his penis.

Indeed, Plaintiff claims he has a serious medical condition, and Bassett's demands that Plaintiff produce a urine sample caused Plaintiff to aggravate his condition by straining to obey the officer's commands and produce a urine sample. Plaintiff contends that Defendant Bassett, by demanding that Plaintiff urinate upon command and refusing to verify Plaintiff's medical condition with medical staff, was deliberately indifferent to Plaintiff's serious medical needs. Finally, Plaintiff alleges that he suffered physical harm.

Recently, the Supreme Court of the United States, in assessing the medical care being provided to California prisoners, set forth the standard of decency that inheres in the Eighth Amendment in the context of a state prison setting:

> As a consequence of their own actions, prisoners may be deprived of rights that are fundamental to liberty. Yet the law and the Constitution demand recognition of certain other rights. Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment. "'The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.'" Atkins v. Virginia, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (quoting Trop v. Dulles, 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)).
>
> To incarcerate, society takes from prisoners the means to provide for their own

> needs. Prisoners are dependent on the State for
> food, clothing, and necessary medical care. A
> prison's failure to provide sustenance for
> inmates "may actually produce physical 'torture
> or a lingering death.'" Estelle v. Gamble, 429
> U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251
> (1976) (quoting In re Kemmler, 136 U.S. 436,
> 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890)); see
> generally A. Elsner, Gates of Injustice: The
> Crisis in America's Prisons (2004). Just as a
> prisoner may starve if not fed, he or she may
> suffer or die if not provided adequate medical
> care. A prison that deprives prisoners of basic
> sustenance, including adequate medical care, is
> incompatible with the concept of human dignity
> and has no place in civilized society.

Brown v. Plata, 131 S.Ct. 1910, 1928 (2011).

The Court must ask whether there are allegations sufficient to demonstrate deliberate indifference to the Plaintiff's serious medical needs.[3]  See Erickson v. Pardus, 551 U.S. 89, 90 (2007) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (citing Estelle v. Gamble, 429 U.S. 97, 104-105 (1976)) (footnotes and internal quotation marks omitted).

---

[3] The Court will assume for the purposes of this opinion that Plaintiff has a serious medical need.

- 11 -

If Plaintiff is to be believed, Defendant Bassett knew about Plaintiff's medical condition, he ignored Plaintiff's request to call medical to verify the condition, and he repeatedly ordered and demanded that Plaintiff produce a urine sample.  In an attempt to comply with the officer's orders, and in order to avoid disciplinary sanctions, Plaintiff strained and forced himself to urinate, causing the passage of blood.

This Court looks to the allegations in the Amended Complaint when reviewing a 12(b)(6) motion.  Recently, the Eleventh Circuit explained:

> Generally, under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  To survive a 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations," Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

Randall v. Scott, 610 F.3d at 705.  Simply, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 570.

In the absence of a constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a Defendant under § 1983.  With respect to the Eighth

- 12 -

Amendment claim against Defendant Bassett, Plaintiff has "nudged [his] claims across the line from conceivable to plausible[.]"  Id.

## B.  Intentional Infliction of Emotional Distress

It is asserted that Plaintiff has failed to state a claim for intentional infliction of emotional distress against Defendant Bassett in Count II because the intimidation of Plaintiff through verbal demands to provide a urine sample, and the implied threat of facing a disciplinary report for failure to obey an officer, is simply not so outrageous so as to constitute conduct beyond all possible bounds of decency.  The Eleventh Circuit, when addressing a claim of intentional infliction of emotional distress, has addressed four factors:

> Florida courts have explained that a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct by the defendant; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. See, e.g., Thomas v. Hospital Bd. of Directors of Lee County, 41 So.3d 246, 256 (Fla. 2d Dist. Ct. App. 2010); Stewart v. Walker, 5 So.3d 746, 749 (Fla. 4th Dist. Ct. App. 2009). To demonstrate that the defendant engaged in outrageous conduct, the plaintiff must show that the defendant's actions were "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)).
>
> . . . .

> The district court also did not err in finding that the amended complaint failed to state a claim for intentional infliction of emotional distress. The facts described in the complaint—that the state court cited the Christmans for criminal contempt and ordered them to be imprisoned for ten days without affording them a hearing—did not rise to the level of extreme, outrageous conduct that was utterly intolerable in a civilized community. See Metropolitan Life Ins. Co., 467 So.2d at 278-79. Because the amended complaint would not have survived a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the district court properly concluded that the Christmans' proposed amendment was futile.

Christman v. Walsh, 416 Fed.Appx. 841, 845-46 (11th Cir. 2011) (per curiam), petition for cert. filed, (U.S. July 29, 2011) (No. 11-5492).

Indeed, with this standard, it is difficult to state a claim for intentional infliction of emotional distress:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> R2-34-16 (quoting Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985)).

Courson v. McMillian, 939 F.2d 1479, 1486 n.13 (11th Cir. 1991).

The conduct of Defendant Bassett, as described in the Amended Complaint, was routine conduct of a correctional officer in requiring an inmate to submit a urine sample.  The officer wanted a obtain a sample for drug testing, and there is nothing about his conduct which suggests he intended to cause mental suffering by repeatedly requesting the sample.  Although insensitive and demanding, the conduct was not outrageous or atrocious.[4]  Plaintiff has failed to state a claim of intentional infliction of emotional distress.

### C.  Negligence Claims

In Counts III and V, Plaintiff claims that Defendants FDOC and McNeil are liable for Bassett and Flores' alleged negligent conduct. Defendants assert that Plaintiff has not complied with the prerequisites for filing a negligence action pursuant to Chapter 768 of Florida Statutes.  In response, Plaintiff states that the pre-suit notice requirements are satisfied because he exhausted his administrative remedies within the prison system which put the Defendants on notice of the dispute, and if this is not sufficient to satisfy the notice requirement, he intends to provide notice, if necessary.  Response at 8.

---

[4] This is not to say that the conduct may not have been deliberately indifferent to Plaintiff's alleged serious medical condition, particularly, when Bassett allegedly failed to contact the medical staff and did not utilize the alternative procedures for collecting a urine sample for an inmate with a confirmed medical condition that inhibits him from urinating upon demand.

Three things are required prior to instituting an action: (1) the claim must be presented to the agency in writing; (2) the claim must be presented to the Department of Financial Services in writing; and (3) the claim must be presented to the Department within three years after it accrues and the agency or Department denies the claim in writing.  Fla. Stat. § 768.28(6).  Plaintiff's excuse or explanation for non-compliance with state notice requirements is not well-founded.  See Gross v. White, 340 Fed.Appx. 527, 532 (11th Cir. 2009) (per curiam) (not selected for publication in the Federal Reporter) (finding inmate plaintiff in a civil rights action filed in federal court did not meet the procedural requirements necessary to pursue a medical negligence claim under Florida law); Johnson v. McNeil, 278 Fed.Appx. 866, 872 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter) (affirming the federal district court in finding that Florida law mandates the dismissal of a medical malpractice claim when the claimant, the personal representative for the estate of the deceased inmate, had not fulfilled the pre-suit requirements under Florida law).

Indeed, compliance with the notice requirements of subsection 768.28(6) is a condition precedent to maintaining this suit, and the requirement is to be strictly construed.  Fla. Stat. § 768.28(b). See Menendez v. North Broward Hospital Dist., 537 So.2d 89, 91 (Fla. 1989) (per curiam).  If a negligence claim is raised, these

prerequisites must be met.  Plaintiff's explanation, claiming the exhaustion of administrative remedies within the prison system constituted sufficient notice of the dispute, will not excuse him from meeting these requirements.

Plaintiff has presented negligence claims against Defendants FDOC and McNeil, however, he has not complied with the pre-suit notice requirements of Chapter 768, Florida Statutes.  Since he has failed to comply with the notice requirements necessary to pursue his negligence claims, the negligence claims will be dismissed from this action without prejudice.

### D.  Claim Against Flores

In Count IV of the Amended Complaint, Plaintiff claims Defendant Flores "adopted a deliberate indifference to Plaintiff's physical impairment" and failed to take remedial measures to protect Plaintiff from further deprivations and harm.  Amended Complaint at 6.  As a result of her actions, Plaintiff asserts that Defendant Flores deprived him of the opportunity to earn wages through the work-release program.  Id.

Since Plaintiff references deliberate indifference, language utilized to support an Eighth Amendment claim, it may appear Plaintiff is attempting to allege an Eighth Amendment violation by Defendant Flores.  However, in response to the assertion that Plaintiff has failed to state a claim against Defendant Flores,

Plaintiff asserts he was denied procedural due process rights.[5]
Response at 4; Response/Flores at 4, citing <u>Williams v. Smith</u>, 781
F.2d 319, 321 (2nd Cir. 1986).  The Court has thoroughly reviewed
the Amended Complaint, and Plaintiff has failed to state a claim of
denial of procedural due process rights against Defendant Flores.
Simply, Plaintiff has not sufficiently alleged that he was provided
with deficient process during the disciplinary proceeding and any
appeal of that proceeding, or in any other grievance process.

The standard of proof for a prison disciplinary proceeding is
"some evidence from which the conclusion of the administrative
tribunal could be deduced . . .'" <u>Superintendent, Mass. Corr.
Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985) (quoting <u>United
States ex rel. Vajtauer v. Commissioner of Immigration</u>, 273 U.S.
103, 106 (1927)).  Plaintiff has not alleged that the disciplinary
proceeding violated any provisions of the Florida Administrative
Code or any due process requirements under <u>Wolff v. McDonnell</u>, 418
U.S. 539 (1974) and <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  At most,
Plaintiff is claiming that he is dissatisfied with the result of the
disciplinary proceedings, that is, a disciplinary conviction which
resulted in his placement in disciplinary confinement and the loss
of privileges.  Once Plaintiff was found guilty of the disciplinary

---

[5] A procedural due process claim would be raised pursuant to
the Fourteenth Amendment of the United States Constitution.

infraction, he was ineligible for the work-release program.  Amended Complaint at 6.

Assuming *arguendo* that Plaintiff is claiming that his appeal of the disciplinary report should have been granted by Warden Flores, this assertion does not sufficiently support a procedural due process claim.  As long as Plaintiff was provided with the process to which he was entitled to challenge the disciplinary report, he has not stated a constitutional due process claim pursuant to the Fourteenth Amendment.

Furthermore, to the extent Plaintiff may be asserting that he simply grieved the matter and the grievance was not properly handled, allegations concerning the denial or the mishandling of grievances do not state a § 1983 claim.  See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct), cert. denied, 530 U.S. 1264 (2000).

### E.  Americans with Disabilities Act

Plaintiff, in Count VI, raises a claim against the FDOC under the ADA.  Defendants assert that Plaintiff's ADA claim fails for four reasons:  (1) monetary damages are sought; (2) "failure to accommodate" is not actionable under Title II; (3) a reasonable

modification in the drug testing procedure is provided for in the Florida Administrative Code; and (4) a private ADA claim for damages against a state must be for conduct that actually violates the Constitution.   Motion to Dismiss at 9-11.

The ADA standard was recently reviewed and succinctly summarized as follows:

> Congress passed The Americans with Disabilities Act of 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (1990).  Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990).

> The statutory language of the ADA "unmistakably includes State prisons and prisoners within its coverage." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). To bring a claim under Title II of the ADA, the plaintiff must allege: (1) he is a "qualified individual with a disability"; (2) he was "excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity"; (3) "by reason of such disability." Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).

> A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the

- 20 -

essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (1990). For purposes of the ADA, a disability is:" [sic] (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (1990).

When evaluating whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." <u>Gordon v. E.L. Hamm & Assoc., Inc.</u>, 100 F.3d 907, 911 (11th Cir. 1996). However, "[a] physical impairment, standing alone ... is not necessarily a disability as contemplated by the ADA." <u>Id</u>.

<u>Hodge v. McNeil</u>, No. 08-23440-CIV, 2011 WL 3101781, at *2-3 (S.D. Fla. July 25, 2011).

Plaintiff can seek monetary damages under Title II of the ADA. A state prison is a public entity, and "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." <u>James v. Campbell</u>, No. 2:05cv451-MHT (WO), 2007 WL 2083690, at *5 (M.D. Ala. July 19, 2007) (not reported in F.Supp.2d) (citations omitted). Of course, Plaintiff Hoffman will have to show that he is a qualified individual with a disability under the ADA. He will also have to show that he was denied reasonable accommodation by reason of his disability or was otherwise discriminated against by the FDOC. <u>Id</u>. at *6. As noted

in <u>United States v. Georgia</u>, 546 U.S. 151, 157 (2006) (citations omitted), "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . den[ial of] the benefits of' the prison's 'services, programs, or activities.'"

Although the FDOC references a modified procedure for inmates with certain medical conditions, Plaintiff claims that he was never allowed to perform a modified procedure.  He alleges that he was required to provide an immediate urine sample, even after he complained that he had a medical condition and requested that his medical condition be confirmed with the medical staff.[6]   He

---

[6] The modified procedure is found in Fla. Admin. Code r. 33-108.101(3)(c), and it provides:

> Upon notification from an inmate that he or she is unable to urinate due to a medical condition, the officer shall verify with medical staff that the inmate possesses a specific medical condition or is taking medication that inhibits the inmate from urinating within the designated time frame. Upon receiving such verification, the inmate shall be given the opportunity to provide a urine specimen under the following conditions:
>
> 1. The inmate shall be informed that he or she will be placed in a dry cell until he or she can provide a valid urine specimen, not to exceed two hours.  The inmate shall be issued a hospital or other type privacy gown during the time that he

or she is housed in the dry cell.

2. The inmate shall remove his or her shirt, shoes, pants, hat, and the contents of his or her pockets. The inmate shall be thoroughly searched prior to entering the dry cell to prevent him or her from using any adulterants such as bleach or cleanser to alter the specimen.

3. The tester shall give the inmate a closed specimen cup with an identification label containing the inmate's name and DC number. The testing officer shall ensure that the inmate acknowledges his or her correct identity information on the label of the specimen cup.

4. The inmate shall be allowed to consume one cup (8 oz.) of water or other beverage every 1/2 hour, not to exceed a total of two cups during the time spent in the dry cell, and Form DC1-823, Acknowledgement of Beverage Form, shall be completed.

5. A physical check shall be made on the inmate once every 30 minutes to see if he or she has provided a valid urine specimen.

6. Upon receipt of the urine specimen the tester shall visually inspect the specimen to ensure it appears valid and unadulterated, and the procedures outlined in paragraph (3)(e) for the testing of urine specimens shall be followed.

7. If after the two hour period an inmate fails to submit a valid urine specimen, the inmate shall be considered to have refused to provide a urine specimen, and a

specifically alleges that Defendant Bassett did not contact the medical staff and ordered Plaintiff to provide an immediate urine sample, never offering a modified procedure.

Plaintiff alleges that the conduct of prison officials violated his Eighth Amendment rights and Title II of the ADA.  Because the guarantee against cruel and unusual punishment has been incorporated into the Due Process Clause of the Fourteenth Amendment, to the extent Hoffman asserts a claim of an actual violation of the Fourteenth Amendment, Title II of the ADA abrogates the State's sovereign immunity and permits this action for damages against the FDOC.

### F.  Damages

Defendants contend that Plaintiff cannot recover compensatory or punitive damages because he alleged only a *de minimus* injury. In the Amended Complaint, Plaintiff alleges he was physically harmed and he passed blood through his urinary tract.  His action is not barred by 42 U.S.C. § 1997e(e) as the passage of blood would signify injury or trauma.

### G.  Eleventh Amendment Immunity for § 1983 Damage Suits

Defendants FDOC and McNeil contend that may not be held liable for damages in federal court.  With regard to Eleventh Amendment

---

disciplinary report shall be prepared in accordance with Rules 33-601.301-.314, F.A.C.

immunity, it is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer.   See McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985).   In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986)(per curiam)(emphasis added), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a **state's eleventh amendment immunity in section 1983 damage suits.** Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979).  Furthermore, after reviewing specific provisions of the Florida statutes, we  recently concluded that **Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.**  See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity.   Id.

Insofar as Plaintiff seeks monetary damages from Defendants FDOC and McNeil in their official capacities, the Eleventh Amendment clearly bars a section 1983 damage suit.  Simply, Plaintiff may not seek monetary damages against the Defendants in their official capacities under 42 U.S.C. § 1983:

> The Eleventh Amendment is an absolute bar to suits for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58,

- 25 -

109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974). Absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit against a state in federal court. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983. <u>See Gamble v. Fla. Dep't of Health & Rehabilitative Servs.</u>, 779 F.2d 1509, 1513 (11th Cir. 1986); Fla. Stat. § 768.28(17). Furthermore, Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. <u>See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation</u>, 49 F.3d 1490 (11th Cir. 1995).

<u>Kornagay v. Burt</u>, No. 3:09CV281LAC/EMT, 2011 WL 839496, at * (N.D. Fla. Feb. 8, 2011) , <u>report and recommendation adopted by Kornagay v. Burt</u>, 2011 WL 855619 (N.D. Fla. Mar. 9, 2011).

Therefore, it is now

**ORDERED:**

1.   Defendants' December 17, 2010, Motion to Dismiss (Doc. #16) is **GRANTED** to the extent that (1) the claim against Defendant Bassett in Count II, for the intentional infliction of emotional distress, will be **DISMISSED**; (2) the claims against Defendants FDOC and McNeil in Counts III and V, for alleged negligent conduct, will be **DISMISSED WITHOUT PREJUDICE;** (3) Plaintiff may not seek monetary damages from Defendants FDOC and McNeil, in their official capacities, under 42 U.S.C. § 1983, for a civil rights violation; (4) and **Defendant Walter A. McNeil** is **DISMISSED** from this action.

Defendants' Motion to Dismiss (Doc. #16) is **DENIED** in all other respects.

2.   Defendant Flores' May 23, 2011, Motion to Dismiss (Doc. #22) (Count IV of the Amended Complaint) is **GRANTED.  Defendant Melody Flores** is **DISMISSED** from this action.

3.   Defendants Bassett and FDOC shall respond to the remaining claims against them in the Amended Complaint (Counts I and VI) within **THIRTY (30) DAYS** from the date of this order.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of September, 2011.

ROY B. DALTON JR.
United States District Judge

sa 9/2
c:
Amy Marie Vo, Esquire
Ass't A.G. (Belitzky)
Ass't A.G. (Neff)