UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KELVIN R. HOFFMAN,

                    Plaintiff,

v.                                    Case No. 3:10-cv-610-J-37JBT

MELODY FLORES, etc.; et al.,

                    Defendants.

_____


**ORDER**

**I.  Status**

Plaintiff, a *pro se* former inmate, is proceeding on an Amended Complaint (Doc. #15) (Amended Complaint), filed on December 3, 2010.[1]   Defendants' [Bassett and the Florida Department of Corrections] April 30, 2012, Motion for Summary Judgment (Motion for Summary Judgment) (Doc. #43) is pending before the Court.   In response, Plaintiff, on October 1, 2012, filed a Motion for Summary Judgment (Doc. #63) (hereinafter Response).[2]   Defendants have filed a Motion to Strike or Deny Plaintiff's Motion for Summary Judgment (Doc. #64), noting that the Motion for Summary Judgment was filed

---

[1] The case was removed from the Circuit Court of the Eighth Judicial Circuit, in and for Baker County, Florida, by the Defendants.   See Notice of Removal (Doc. #1).

[2] Plaintiff was made aware of the provisions for responding to a motion for summary judgment in the Court's Order (Doc. #46), filed May 16, 2012, and given an opportunity to respond.

nearly six months after the dispositive motion deadline set by the Court's scheduling order.  See Order (Doc. #35) filed December 21, 2011.

Plaintiff's previous untimely, unsigned Motion for Summary Judgment was stricken on September 18, 2012.  Order (Doc. #61). Plaintiff was ordered to file a signed response to Defendants' Motion for Summary Judgment on or before September 28, 2012. Instead of filing a signed response, Plaintiff filed a signed Motion for Summary Judgment (Doc. #63).  Defendants' Motion to Strike (Doc. #64) is due to be granted; however, the Court will liberally construe Plaintiff's *pro se* Motion for Summary Judgment (Response) (Doc. #63) to be Plaintiff's response to the Defendants' Motion for Summary Judgment, and it will be considered to be a response, not a motion.

The remaining Defendants are Sam A. Bassett, a correctional officer at Baker Correctional Institution (BCI), and the Florida Department of Corrections (hereinafter FDOC).  See Order (Doc. #26). The remaining claims are:  (1) Count I, in which Plaintiff raises an Eighth Amendment claim against Defendant Bassett for demanding that Plaintiff provide a urine sample, while having knowledge of Plaintiff's physical impairment, resulting in Plaintiff being injured and subjecting Plaintiff to cruel and unusual punishment; and (2) Count VI, in which Plaintiff raises a claim against the FDOC under the Americans With Disabilities Act (ADA), asserting his

difficulties with urination constitute a disability pursuant to 42 U.S.C. § 12131, the disability was known by the FDOC and its employees, and the failure of the employees of the FDOC to accommodate his disability resulted in his suffering an injury, being denied the rights and privileges of a general prison population inmate, and being deprived of the opportunity to earn wages in the work-release program.  As relief, Plaintiff seeks an award of damages.

## II.  Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb Co., 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is

a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548).[3]

<u>Id</u>. at 1314.

### III.  The Amended Complaint

The following factual allegations in the Amended Complaint are relevant to the remaining claims against the remaining Defendants. While confined at BCI, Plaintiff suffered from urinary incontinence and dysfunction of bladder control, which was known to Defendant Bassett. <u>Id</u>. at 2.  Plaintiff's ability to urinate voluntarily and at will was impaired due to this condition. <u>Id</u>. Defendant Bassett, on September 28, 2009, demanded a urine sample from Plaintiff, removed Plaintiff from his cell and placed him in a shower area. <u>Id</u>. at 3.  Plaintiff was unable to produce a sample, but explained that he had a physical condition. <u>Id</u>.  Plaintiff requested that verification of his physical impairment be made by Defendant Basset with the medical staff. <u>Id</u>.  Defendant Bassett failed to contact the medical staff and verify Plaintiff's condition. <u>Id</u>.  Instead, he demanded that Plaintiff produce a urine sample. <u>Id</u>.

Plaintiff feared the receipt of a disciplinary report for failure to comply with a direct order to produce a urine sample, so he tried to comply with Bassett's orders. <u>Id</u>.  In trying to comply with Bassett's demands, Plaintiff strained and forced himself to

---

[3] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

urinate, resulting in blood passing from his penis. Id. Defendant Bassett wrote a disciplinary report against Plaintiff for failure to comply with his demands to produce a urine sample. Id. As a result of receiving this disciplinary violation, Plaintiff was not entitled to participate in a work-release program and was unable to earn wages while he was incarcerated. Id. In addition, he was segregated from the general prison population and deprived of additional liberties from September 28, 2009, through November 19, 2009. Id. at 4.

## IV.   Count I

Plaintiff asserts that Defendant Basset's actions in demanding a urine sample constituted deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth Amendment proscription against cruel and unusual punishment. Plaintiff claims he suffered an injury, endured emotional distress, and lost privileges and wages. Plaintiff alleges that Defendant Bassett knew that Plaintiff had a physical impairment, and Bassett knew, or should have known, that the impairment and dysfunction substantially impaired Plaintiff's ability to urinate voluntarily and at will. He alleges the physical harm was the passing of blood through his urinary tract, the emotional harm was his suffering from humiliation and degradation, and the lost wages were a result of the disciplinary report and being removed from consideration for work-release. He states he was placed in segregation and deprived of

additional liberties from September 28, 2009, through November 19, 2009. Plaintiff seeks an award of unspecified damages against Defendant Bassett.

## V.   Count VI

Plaintiff raises a claim under the Americans With Disabilities Act (hereinafter ADA) against the FDOC.  He contends that his difficulties with urination constitute a disability pursuant to 42 U.S.C. § 12131, that he is a qualified individual with a disability, and the disability was known by the FDOC and its employees.  He asserts that he suffered an injury, was denied the rights and privileges of a general prison population inmate, and was deprived of the opportunity to earn wages in the work-release program due to the failure of the employees of the FDOC to accommodate his disability.  When placed in solitary or disciplinary confinement, he was excluded from services, programs (including work release), and activities offered to the general prison population.  When subjected to discipline based on a disciplinary report and due to the lack of corrective action, he was excluded from services, programs, and activities, including work-release.  As relief, Plaintiff seeks monetary damages against FDOC.

## VII.  Conclusions of Law

### A.   Eighth Amendment Claim Against Defendant Bassett

Plaintiff claims that Defendant Bassett's demand that he provide a urine sample, while having knowledge of Plaintiff's

- 6 -

physical impairment, resulted in Plaintiff being subjected to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.  In the Motion for Summary Judgment at 13-18, Defendants urge the Court to grant summary judgment asserting Plaintiff has failed to show that there was a serious medical need to which Defendant Bassett was deliberately indifferent; Defendant Bassett lacked the requisite mental intent for a deliberate indifference to a serious medical need claim; and Petitioner did not suffer a physical injury, only discomfort in bleeding.

Plaintiff is asserting that Defendant Bassett ordered him to produce a urine sample, even though he knew Plaintiff suffered from urinary incontinence and dysfunction of bladder control.  When Plaintiff was unable to produce the sample upon command, Plaintiff asked Defendant Bassett to verify Plaintiff's medical condition by contacting the medical staff.  Bassett did not do so, and again ordered Plaintiff to produce a sample.  Due to his fear of the sanctions which would follow a failure to obey an officer's orders, Plaintiff strained and forced himself to urinate, resulting in the passage of blood from his penis.

Defendants have submitted a portion of the transcript of the Video Deposition of Kelvin R. Hoffman taken on March 13, 2012.  Ex. F.  Plaintiff attested to the following:

> A    Well, I was called out of the cell
> and ordered to do a urine sample. **And I
> informed Officer Bassett that I had medical**

> **problems that would hamper my ability to just urinate freely.**
>
> And I asked -- **I also explained to him that this was documented in my medical records in the Department of Corrections, like, ten years prior to that.  And if he would contact the Medical Department to appropriate [sic] me with the ususal accommodations that's set, I would appreciate it.  And he denied me that.**
>
> . . . .
>
> A     **He ordered me to urinate.  I strained.  I bled.  And at the end of that, with a little blood in the cup at the end of that test, when I couldn't provide any urine, he smashed the cup.  Under his foot.**

Id. at 10-11 (emphasis added).

When asked whether he had been picked to provide a urine sample in previous random testing, Plaintiff responded affirmatively and explained that he was able to provide a sample:

> A     Yes.     With  time  --  with  time. Sometimes  out  of  the  allotted  time  that  a normal  inmate  without  medical  problems  or  an individual without medical problems would have, I'm usually allotted more time because officers do call medical to verify that I have problems urinating.
>
> . . . .
>
> They give me extra allotted amount of time and water, you know.  And they don't really - they're not really persistent about -- normally about  that  after  they  know  that,  you  know, medical  problems  exist.

Id. at 11-12.

Plaintiff said he informed Defendant Bassett of his urination problems:

> **That I had problems urinating by order or demand as to right then, giving a sample right then, right?  I cannot explain what happened after that, the head injuries that I had.  But I cannot correlate in my mind sometime or my body.**  I can't hold it.  It comes freely and, you know, sometimes I can't hold it, you know, to not stop the flow.

Id. at 12-13 (emphasis added).

Plaintiff told Defendant Bassett he had an "incontinence problem, urinary."  Id. at 13.  Plaintiff offered to get medical documentation out of his cell to support his claim.  Id.  Plaintiff explained that after a head injury he suffered from incontinence, among other medical issues.  Id. at 15, 19.  Plaintiff was provided with adult diapers, but the institutional doctors told him there was not much they could do for him, but that once he was out of prison, he could seek other options.  Id. at 16.  Plaintiff was advised that there was not "a pill that I can take to stop urinating or start urinating when -- you know, when ordered."  Id.

Plaintiff complained that Defendant Bassett "taunted him" by "saying things that were inappropriate and, you know, looking at my genitals, and you know, wanting to see them.  Wanting to have me face in front of him to offer a urine sample, you know."  Id. at 17.  Defendant Bassett told Plaintiff he was going to be given a disciplinary report if Plaintiff did not comply with his demand and urinate.  Id. at 25.  Plaintiff told Defendant Bassett that he could

not do it, _id._, and when he tried to urinate, he suffered "discomfort in bleeding[.]" _Id_. at 18.

Plaintiff received a disciplinary report for failing to provide a urine sample, which was overturned. _Id_. at 27. Plaintiff said it was overturned "because Officer Bassett failed to follow the procedures that are required by an officer when an inmate has a medical problem to urinate." _Id_. Plaintiff attested that he received relief "after the record attachment grievance process to Tallahassee and they saw that I had medical records from evaluations from the Department of Correction[s], that's where my relief came from, out of confinement." _Id_. at 34.

Plaintiff attested that due to this disciplinary report, he was removed from eligibility for the work release program.[4] _Id_. at 28. Even though the disciplinary report was overturned, Plaintiff was told he had to start over again and qualify for work release. _Id_. at 29. He eventually was placed on the work release program. _Id_. at 30.

With regard to disciplinary reports, the record shows the following. Plaintiff received a disciplinary report for possession of negotiables on September 27, 2009. Ex. A. He was found guilty of the charged infraction and received fifteen days of disciplinary confinement. _Id_. Plaintiff appealed to the Warden, his request for

---

[4] Plaintiff also received a disciplinary report for possession of negotiables, but that disciplinary report was overturned. _Id_. at 43-44.

administrative remedy was approved on November 2, 2009, and he was advised that the disciplinary report would be expunged from his record.  Id.

Plaintiff received a disciplinary report for refusing substance abuse testing on September 28, 2009.  Ex. B.  The report states:

> On September 28, 2009, at approximately 1255 hours, I ordered Inmate Hoffman, Kelvin DC#291036 to provide a urine sample in compliance with the substance abuse testing program.  **Inmate Hoffman informed me that he could not provide a urine sample.**  Inmate Hoffman was detained in my presence for one hour.  Inmate Hoffman was allowed to consume two (2) eight ounce cups of water and signed a DC1-823 form "acknowledgement [sic] of beverage".  At approximately 1355 hours Inmate Hoffman still could not provide a urine sample. Inmate Hoffman is being charged with a violation of the prohibited rules of conduct, FAC, Chapter 33-601.314 and is being charged with 9-26 refusing substance abuse testing. The testing process was completed in compliance with Chapter 33-108.  I am certified by Micro-Distributing Inc. to conduct on site substance abuse tests.  Captain F. Young, Shift Officer in Charge, was notified of this incident and authorized this report to be written.  This is a re-write of DR Log #279-090672 due to technical errors.

Ex. B (emphasis added) (capitalization omitted).

In his Witness Statement of October 1, 2009, Plaintiff said:

> I did not refuse the (Substance Abuse Test)[.] During the time of my being ordered to provide a urine sample.  Chow had just been served I was about to drink some water when the officer ordered me not to.  The off. said that he would give me water. Ramadan (the month of fasting) had just been completed my system had still not made the adjustments.  During the time of the test (urine) I ask [sic] the

officer if I could use the toilet.  I had to go
- "Really bad."  The off. said "no."  During
the time of testing I strained myself to
urinate so hard that blood came from my penis.
I also explained to the officer that I could
not urinate in the presence of other to [sic]
well.  I explain to the off. that my just
coming off Ramadan and my body untimely
function should qualify as a medical condition
- and if he would ask Medical the officer
refused.  As my body age I don[']t have control
as I use[d] to.  Just as the officer was about
to leave I informed him that I had to go.  The
off. said no[.]  He smash[ed] the cup and
left[.]

Id.

Defendant Bassett, in his statement of October 1, 2009, said
Plaintiff did not strain to urinate, and blood was not observed.
Id.  Bassett said Plaintiff did not inform him of a medical
condition that would prevent the provision of a urine sample.  Id.
Dr. Trung Van Le, M.D., on October 1, 2009, provided a Witness
Statement that Plaintiff "has no medical problems."  Id.  At the
disciplinary proceeding on October 6, 2009, Plaintiff was found
guilty as charged and received sixty days of disciplinary
confinement.  Id.

Plaintiff appealed to the Warden on October 12, 2009, stating
that for medical reasons he could not provide a urine sample, that
he strained to urinate and had spots of blood coming from his penis,
and that in the past he suffered a head injury and, as a result, he
has "urinary, incontinence problems."  Ex. C.  Plaintiff explained
that he informed Officer Bassett of his medical problem and the

- 12 -

officer refused to verify Plaintiff's medical condition with the medical department. Plaintiff said he was not given the opportunity to use the alternate procedure even though his medical problem hampers his ability to voluntarily control his bodily functions. On October 23, 2009, the grievance was denied. Id.

On November 4, 2009, Plaintiff appealed to the Secretary, claiming that his medical records were overlooked in the disciplinary process. Id. He complained that Defendant Bassett refused to verify his medical condition. Id. Plaintiff also complained that the disciplinary team stated that they were not going to honor the medical records Plaintiff provided because they were old and difficult to read. Id. The medical records from University Medical Center are dated January 20, 1998, with a diagnosis of a contusion, closed head injury. Id. The x-ray report of November 19, 1998, shows a history of head trauma times 2, episodes of vertigo, headache and memory problems, and urinary incontinence. Id. There is a consultation request from neurology dated October 26, 1998. Id. The Interdisciplinary Progress Notes from May 19, 1998 reflect that Plaintiff is experiencing incontinence, both urinary and fecal, and is requesting adult pads. Id.

Plaintiff's appeal was referred back to the institution for redress. On November 13, 2009, a Response from the Warden was issued showing that the grievance was approved for further inquiry.

Id. On November 21, 2009, the Assistant Warden of Programs informed Plaintiff: "[a]fter further review and investigation, Disciplinary Report Log #279-090677 for Refusing Substance Abuse Testing has been overturned by the Warden due to technical errors." Id. It concluded, "your grievance is APPROVED." Id.

Defendant Bassett has submitted a Declaration stating:

> On September 28, 2009, I was assigned to conduct an on-site substance abuse test of Kelvin Hoffman in the confinement dormitory at Baker Correctional Institution where he was housed. At approximately 12:55 p.m., I ordered Mr. Hoffman to provide a urine sample pursuant to the Florida Department of Corrections' substance abuse testing program. Mr. Hoffman informed me that he could not provide a urine sample, but made no mention of any medical condition which would inhibit him from urinating within the designated time frame. If Mr. Hoffman had notified me of such a medical condition I would have contacted medical to verify that Mr. Hoffman did, in fact, possess such a condition. If such a medical condition was verified by medical, I would have initiated the dry cell testing procedures outlined in Florida Administrative Code Rule 33-108.101(3)(c). At the time of this substance abuse test I had never seen Mr. Hoffman's medical records and had no knowledge of anything contained within those records. Therefore, I had absolutely no reason to believe that Mr. Hoffman possessed any medical condition which would inhibit his ability to provide a urine sample within one hour.
>
> Mr. Hoffman was detained in my presence for one full hour. Mr. Hoffman was allowed to consume two eight ounce cups of water during that time. Mr. Hoffman signed a DC1-823 "acknowledgement [sic] of beverage" form confirming that I provided him with these two cups of water. After one full hour, at approximately 1:55 p.m., Mr. Hoffman still

- 14 -

could not provide a urine sample. Mr. Hoffman
was then written a disciplinary report for 33-
601.314 § 9-26, Refusing to Submit to Substance
Abuse Testing. All of my actions taken with
regard to Mr. Hoffman's drug testing on
September 28, 2009, were in accordance with
Florida Administrative Code Rule 33-
108.101(3)(b).

At no time during my interaction with Mr.
Hoffman did I intimidate him or harass him or
otherwise inappropriately pressure him to
produce a urine sample. At no time during my
interaction with Mr. Hoffman did I observe him
straining to produce a urine sample. At no
time during my interaction with Mr. Hoffman did
he produce a urine sample which I refused to
accept. At no time during my interaction with
Mr. Hoffman did I observe any blood pass from
his penis or observe any other evidence that
blood had passed from his penis. If I had
observed any blood, or anything that appeared
to be blood, in the specimen cup I would have
followed the procedure outlined in Florida
Administrative Code Rule 33-108.101(3)(b)12,
and immediately taken Mr. Hoffman to medical
for evaluation to determine if there was any
valid reason for there to be blood in his
urine.

Ex. D.

The Declaration of Doctor Olugbenga Ogunsanwo, the Assistant
Secretary of Health Services for the Florida Department of
Corrections, was also submitted to the Court. Ex. E. He opines
that Plaintiff's medical records do not show a medical condition
that would have prevented Plaintiff from providing a urine sample
or any medical reason for Plaintiff to receive additional time to
provide a sample. Id. He defines urinary incontinence as being a
condition which causes the involuntary loss of urine. Id. He notes

- 15 -

that "[u]rinary incontinence does not prevent initiating a urine flow or maintaining adequate stream of urine, provided the bladder is full and there is no associated bladder outlet obstruction or identifiable neurological deficits." Id.  Additionally, he opined that urinary incontinence is not a condition which would cause blood to be passed in a person's urine.  Id.  He states that "blood in the urine can come from the urethra, bladder, ureters and kidneys[.]" Id.  Dr. Ogunsanwo found no record of impairment of neurological function other than an abnormal MRI of the brain from a past injury.

There remain disputed issues of material fact.  If Plaintiff's sworn video deposition testimony is to be believed, Plaintiff told Defendant Bassett about his problems urinating on demand, Defendant Bassett knew about Plaintiff's medical condition, Defendant Bassett ignored Plaintiff's request to call medical to verify the condition, Defendant Bassett repeatedly ordered and demanded that Plaintiff produce a urine sample, and Defendant Bassett failed to make any accommodations due to Plaintiff's medical condition.  In an attempt to comply with the officer's orders, and in order to avoid disciplinary sanctions, Plaintiff strained and forced himself to urinate, causing the passage of blood.  He states he suffered "discomfort in bleeding[.]"  Ex. F at 18.

In order to prevail in a 42 U.S.C. § 1983 action, Plaintiff must demonstrate: "(1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a

deprivation occurred under color of state law." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing Arrington v. Cobb Co., 139 F.3d 865, 872 (11th Cir. 1998)).  Here, Plaintiff claims he was subjected to an Eighth Amendment violation by the actions of Defendant Bassett.  "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S. Const. amend. VIII.  The Eighth Amendment is applicable to the states through the Fourteenth Amendment." Id. (citation omitted). The Eighth Amendment's prohibitions against cruel and unusual punishments includes "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A serous medical need is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted).  There are two components which must be satisfied, an objective one and a subjective one. Bingham, 654 F.3d at 1175.  "Initially, a plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a 'subjective' showing that the defendant acted with 'a sufficiently culpable state of mind.'" Quirindongo v. Martinez, No. 1:CV-10-01742, 2012 WL

2923996, at *16 (M.D. Pa. July 18, 2012) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

To demonstrate that the official had the subjective intent to punish, the prisoner is required to show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).  If pain is intentionally inflicted on an inmate or if the inmate is subjected to undue suffering or the threat of tangible residual injury, a deliberate indifference to a serious medical need is demonstrated.  Quirindongo, 2012 WL 2923996, at *16 n.6.

Courts have accepted that "incontinence of bowel and bladder may be characterized as a serious medical condition." Miller v. Mich. Dep't of Corr. Health Care Providers, 986 F.Supp. 1078, 1080 (W.D. Mich. 1997).  Incontinence may be related to interruptions of the "normal functions of [the] nervous system." Taylor v. Franklin Co. Ky., 104 Fed.Appx. 531, 538 n.4 (6th Cir. 2004) (not selected for publication in the Federal Reporter) (medical testimony was provided that a tumor was interrupting the normal functions of the inmate's nervous system and causing incontinence).  Additionally, urinary retention, with the bladder remaining full, may lead to incontinence and bladder control issues.  See Stewart v. Joubert, No. JFM-11-427, 2012 WL 294910, at *5 (D. Md. Jan. 31, 2012);

Johnson v. Stouffer, No. JFM-10-1199, 2011 WL 705172, at *2 (D. Md. Feb. 22, 2011).

The Court is convinced that Plaintiff has presented operative facts showing a serious medical need. The onset of his urinary problems occurred after a head injury. Specifically, Plaintiff attested that he had no history of loss of bladder control prior to his head injury. Ex. F at 19. Plaintiff has alleged that his incontinence is related to his head injuries, indicating that the normal functions of his nervous system may have been compromised by his head injuries. The medical records support his claim of head injuries and complaints of experiencing incontinence as well as other symptoms after the head injuries. Ex. C. Plaintiff Hoffman has satisfied the objective component of the Eighth Amendment by showing that his bouts of loss of bladder control were sufficiently serious to warrant medical attention and consideration.

With regard to the subjective component of an Eighth Amendment violation, Plaintiff must establish that Defendant Bassett had subjective knowledge of a risk of serious harm to Plaintiff and that Defendant Bassett disregarded that risk. Indeed, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Also of import, a prison official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he

strongly suspected to be true, or declined to confirm inferences of risks he strongly suspected to exist[.]" <u>Id</u>. at 843 n.8.  <u>See</u> <u>Justice v. Green</u>, No. JFM-11-266, 2012 WL 366875, at *9 (D. Md. Feb. 2, 2012) (finding genuine issues of fact remain concerning deliberate indifference to known continuing incontinence when the only treatment provided is issuance of adult diapers, and questioning whether neurological and urological consultations ever occurred or were denied).

Here, of course, Plaintiff claims that he told Defendant Bassett he had medical problems that hampered his ability to urinate freely or upon demand.  He also attests that he asked Defendant Bassett to call medical to confirm his medical condition.  Plaintiff offered to go to his cell and obtain the medical records he had on hand.  Plaintiff contends that Defendant Bassett refused to call medical or allow Plaintiff to go to his cell to obtain the medical records.  Instead, Plaintiff states that Defendant Bassett told him he would receive a disciplinary report if he did not comply with the order to urinate.  Plaintiff attests that he told Defendant Bassett he could not urinate on demand, and when Plaintiff tried to comply with Bassett's demands, Plaintiff suffered "discomfort in bleeding," a sign of injury or trauma.

If Plaintiff's testimony is to be believed, Defendant Bassett's actions did worsen Plaintiff's medical condition and adversely affected him as Plaintiff passed blood in an attempt to urinate in

order to avoid disciplinary sanctions.  See Miller v. Mich. Dep't of Corr. Health Care Providers, 986 F.Supp. at 1081 (asking whether the unmet medical needs worsened the inmate's medical condition and adversely affected him).  There remain disputed issues of material fact with regard to whether Defendant Bassett's conduct was highly unreasonable and reflected deliberate indifference.  In light of the above, Defendant Bassett's Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment claim will be denied.

### B.  Americans with Disabilities Act (ADA)

In Count VI, Plaintiff raises a claim against the FDOC under the ADA.  "In United States v. Georgia, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity 'insofar as [it] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment. . . .'" Miller v. King, No. CV698-109, 2007 WL 2164534, at *4 (S.D. Ga. July 24, 2007) (quoting United States v. Georgia, 546 U.S. 151, 159 (2006)).  In denying the FDOC's Motion to Dismiss, this Court found that Plaintiff's action for damages against the FDOC was permitted as Title II of the ADA abrogates the State's sovereign immunity.  Hoffman v. Flores, No. 3:10-cv-610-J-37JBT, 2011 WL 3897981, at *10 (M.D. Fla. Sept. 6, 2011) (not reported in F.Supp.2d).

The Eleventh Circuit has said:

> In order to state a Title II claim, a
> plaintiff generally must prove (1) that he is

> a qualified individual with a disability; (2)
> that he was either excluded from participation
> in or denied the benefits of a public entity's
> services, programs, or activities, or was
> otherwise discriminated against by the public
> entity; and (3) that the exclusion, denial of
> benefit, or discrimination was by reason of the
> plaintiff's disability.

Bircoll v. Miami-Dade Co., 480 F.3d 1072, 1083 (11th Cir. 2007)

(citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir.2001)).

Plaintiff Hoffman has the burden of showing that he is a qualified individual with a disability under the ADA.  He must also show that he was denied reasonable accommodation by reason of his disability or was otherwise discriminated against by the FDOC.  Here, Plaintiff attests that his medical condition was not taken into account, and he was not allowed to perform a modified procedure as set forth in the FDOC rules allowing for special accommodations for individuals with medical problems.  Ex. F at 11-12, 27-28.  He claims the disciplinary report he received for failure to urinate on demand resulted in a confinement situation making him ineligible for work release and other rights and privileges.  Id. at 28.

Defendant FDOC asserts that Plaintiff has not alleged intentional discrimination due to his disability; and therefore, Plaintiff is not entitled to seek damages.  Motion for Summary Judgment at 24.  Upon review, the intentional discrimination requirement may be satisfied through a showing of deliberate indifference.  Liese v. Indian River Co. Hosp. Dist., No. 10-15968, 2012 WL 5477523, at *9-*12 (11th Cir. Nov. 13, 2012).  Plaintiff

Hoffman has certainly alleged deliberate indifference, and he may "demonstrate discriminatory intent through a showing of deliberate indifference." Id. at *9.   The FDOC also asserts that Plaintiff has not demonstrated a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, and since there has been no constitutional violation, there is no resulting abrogation of the State's Eleventh Amendment immunity from damages. Motion for Summary Judgment at 24.   The Court has found that Plaintiff has adequately alleged an Eighth Amendment claim and there remain disputed issues of material fact as to whether Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment.   The FDOC's request that Plaintiff's ADA damages claim be dismissed, contained in the Motion for Summary Judgment at 25, is due to be denied.

Therefore, it is now

**ORDERED:**

1.   Defendants' October 17, 2012, Motion to Strike (Doc. #64) is **GRANTED** and the **Clerk** shall terminate Plaintiff's Motion for Summary Judgment; however, the Court liberally construes Plaintiff's pro se Motion for Summary Judgment (Doc. #63) to be Plaintiff's response to the Defendants' Motion for Summary Judgment, and it will be considered to be a response, not a motion.

2.   Defendants' April 30, 2012, Motion for Summary Judgment (Doc. #43) is **DENIED**.

    3.    Defendants' October 17, 2012, Motion to Deny Plaintiff's Motion for Summary Judgment (Doc. #64) is **DENIED AS MOOT**.

    **DONE AND ORDERED** at Jacksonville, Florida, this <u>19th</u> day of December, 2012.

ROY B. DALTON, JR.
United States District Judge

sa 12/13
c:
Kelvin R. Hoffman
Counsel of Record